UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
In re PHILIP MORRIS INTERNATIONAL       :   No. 1:18-cv-08049-RA
INC. SECURITIES LITIGATION              :
                                        :   <u>CLASS ACTION</u>
                                        :
                                        :
This Document Relates To:               :
                                        :
    ALL ACTIONS.                        :
                                        :
———————————————————— x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S FEBRUARY 4, 2020 OPINION AND ORDER**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. ARGUMENT ..............................................................................................................1

    A.  The Court Should Reject Defendants' Scienter Argument......................................1

    B.  The Court Should Reject Defendants' Item 303 and 503 Arguments .....................2

    C.  The Court Should Reject Defendants' "Horizon" Arguments................................5

    D.  Defendants Provide No Justification for Deviating from the Second Circuit's Strong Preference for Leave to Amend ......................................................8

III. CONCLUSION...........................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Burstein, P.C. v. Long*,
   2017 WL 3535004
   (S.D.N.Y. Aug. 16, 2017) ..................................................................................................8, 9

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014) ...............................................................................................5, 8

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010) ....................................................................................7

*Go v. Rockefeller Univ.*,
   2008 WL 619039
   (S.D.N.Y. Mar. 6, 2008) .........................................................................................................9

*In re CPI Card Grp. Inc. Sec. Litig.*,
   2017 WL 4941597
   (S.D.N.Y. Oct. 30, 2017) ....................................................................................................4, 7

*In re Crude Oil Commodity Litig.*,
   2007 WL 2589482
   (S.D.N.Y. Sept. 7, 2007) .........................................................................................................9

*In re Gildan Activewear, Inc. Sec. Litig.*,
   2009 WL 4544287
   (S.D.N.Y. Dec. 4, 2009) .........................................................................................................9

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ......................................................................................2

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009) ....................................................................................8

*In re Supercom Inc. Securities Litigation*,
   2018 WL 4926442
   (S.D.N.Y. Oct. 10, 2018) ....................................................................................................6, 7

*In re Tamoxifen Citrate Antitrust Litig.*,
   466 F.3d 187 (2d Cir. 2006) ...................................................................................................9

Page

*Kopchik, III v. Town of E. Fishkill, N.Y.*,
  759 F. App'x 31 (2d Cir. 2018) ............................................................................................. 8, 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ......................................................................................... 2, 8, 9, 10

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
  801 F. Supp. 2d 41 (E.D.N.Y. 2011) ........................................................................................ 7

*McKenna v. SMART Techs. Inc.*,
  2012 WL 3589655
  (S.D.N.Y. Aug. 21, 2012) ............................................................................................. 4, 5, 7, 8

*Rozenzweig v. ClaimFox, Inc.*,
  251 F. Supp. 3d 449 (E.D.N.Y. 2017) .................................................................................. 9, 10

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
  707 F.3d 95 (1st Cir. 2013) ....................................................................................................... 4

*Singh v. Schikan*,
  2015 WL 4111344
  (S.D.N.Y. June 25, 2015) .......................................................................................................... 9

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
  723 F. App'x 20 (2d Cir. 2018) ................................................................................................ 3

*Williams v. Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2011) ...................................................................................................... 9

**STATUTES, RULES AND REGULATIONS**

17 C.F.R.
  §229.303(a)(3)(ii) ............................................................................................................. *passim*

17 C.F.R.
  §229.503(c) ........................................................................................................................... 2, 5

Lead Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for partial reconsideration of the Court's February 4, 2020 Order (the "Motion").[1]

## I. INTRODUCTION

Plaintiffs have satisfied their high burden for requesting reconsideration. They respectfully submit that the Court overlooked the reasonable inference – established by Defendants' own decision to drastically reduce HeatStick shipments in 1Q18 – that in February 2018 Defendants were already aware of (but failed to disclose) Philip Morris's near saturation of the early adopters of iQOS in Japan. Similarly, they have alleged the manifest injustice resulting from a failure to give Plaintiffs an opportunity, consistent with Second Circuit authority, to replead *all* their claims.

## II. ARGUMENT

### A. The Court Should Reject Defendants' Scienter Argument

Defendants argue that the Court should deny the Motion because Plaintiffs do not address the Court's independent basis for dismissal – scienter. *See* Def. Mem. at 1-2, 5-6; *see also* Order at 36-41 (scienter analysis). That argument fails for two reasons.

First, the Motion expressly addresses – in the context of Item 303, which concerns "*known trends or uncertainties*" (17 C.F.R. §229.303(a)(3)(ii)) – Defendants' *actual knowledge* of "'the level of saturation among the early adopters and innovators in Japan and how that would impact iQOS and HeatStick sales in 2018.'" Pl. Mem. at 4 (quoting ¶306). In particular, the Motion discusses defendant King's admission that the Company had been "'*anticipating* that we would reach some sort of a plateau [in iQOS demand] later in the year, given that *we knew the consumer*

---

[1] This memorandum adopts the definitions used in the Order and in Plaintiffs' opening memorandum of law (ECF No 126; "Pl. Mem."). "Def. Mem." refers to Defendants' memorandum opposing the Motion (ECF No. 130). In quoted material, emphasis is added, while internal citations, footnotes, and quotation marks are omitted, unless otherwise noted.

*dynamics that we had – close to saturating the early adopters and innovators*. It's just coming a bit earlier in the year *than what we had foreseen*.'" *Id.* at 5 (quoting ¶143; McDonough Decl., ECF No. 108, Ex. 22 at 8). And the Motion addresses the Company's act of shipping more than *50%* fewer HeatSticks – or *7 billion units* – to Japan in 1Q18 than in 4Q17, evincing Defendants' understanding of decreased demand in that market no later than mid-February 2018. *See id.*

These allegations of Defendants' *actual knowledge* of the true, diminishing demand for iQOS and HeatSticks in Japan – which they did not disclose during the Class Period (in violation of Item 303), and which contradicted Calantzopoulos's February 2018 representation that there was nothing then on the horizon to alter the outlook for the "combustible plus [] HeatStick volume outlook for Japan" (¶283) – far exceed the recklessness standard for pleading scienter recognized in this Circuit. *See* Order at 37 (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014)). Plaintiffs have, therefore, more than adequately pled scienter.[2]

Second, Plaintiffs have asked the Court to reconsider its decision to dismiss most of their claims with prejudice without first affording them an opportunity to amend the AC with the benefit of the Court's reasoning in the Order. *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also* Section II.D below. The Court's scienter analysis in the Order has no bearing on this request.

B.     **The Court Should Reject Defendants' Item 303 and 503 Arguments**

None of Defendants' purported bases for opposing reconsideration of Plaintiffs' Item 303 and 503 claims has merit. Defendants assert, for example, that those claims "rest entirely" on King's admission that Defendants were "'anticipating'" a plateau in HeatSticks demand in Japan

---

[2]   As discussed in more detail below, Plaintiffs' Item 303 "knowledge" discussion applies equally to Calantzopoulos's affirmative "horizon" statement. *See* Section II.C.

sometime in 2018, "'given that we knew the consumer dynamics that we had – close to saturating the early adopters and innovators,'" and that it was "'just coming a bit earlier in the year than what we had foreseen.'"  Def. Mem. at 6 (quoting ¶143).  Defendants' assertion is untrue.

King's admission establishes, without reservation, the existence of the previously undisclosed "known trend[] or uncertaint[y]" underpinning Plaintiffs' Item 303 claim – that the early-adopter market for iQOS and HeatSticks in Japan was almost saturated, as a result of which Japanese demand was about to plateau.  ¶143.  It also establishes Defendants' prior knowledge of that trend or uncertainty: Defendants had been "'anticipating'" a plateau in demand for some time, given that "'we knew the consumer dynamic that we had.'"  *Id.*  What it does *not* establish, according to Defendants – and the Court effectively agreed (without addressing the "known trend or uncertainty" language of Item 303) – was that Defendants were aware of this trend or uncertainty when the Company issued its Form 10-K in mid-February 2018.  *See* Def. Mem. at 6-7, 8; Order at 36 ("'[T]hese allegations amount to fraud by hindsight because Plaintiffs plead no facts demonstrating that the Company did not actually believe' the statements when they were made.") (quoting *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 723 F. App'x 20, 22 (2d Cir. 2018)).

But Plaintiffs plead more than the admission itself.  They also allege that, in the quarter preceding King's admission (1Q18), Philip Morris reduced HeatStick shipments to Japan by billions and billions of units – more than 50% – from over 13 billion units in 12Q17 to only 6.2 billion units in 1Q18, as Defendants themselves reported.  *See* ¶140.  Defendants' dramatic reduction in these shipments – in the very quarter Philip Morris filed its 2017 Form 10-K (on February 14, 2018) – confirms both the *existence* of the trend or uncertainty Plaintiffs allege – *i.e.*, decreasing demand for iQOS in Japan resulting from the near-saturation of the younger consumer

group – and Defendants' contemporaneous *knowledge* of it.  Plaintiffs respectfully submit it is *inconceivable* that by mid-February 2018 – halfway through the quarter, when Philip Morris filed its Form 10-K – the Company had not already begun the process of reducing shipments of HeatSticks by over *7 billion units* – a more than *50% reduction* – *or at a minimum knew it had to do so*.

Even if the Court disagrees, however, it is not Plaintiffs' obligation to establish, at the pleading stage, *conclusively* when Defendants became aware of the Item 303 trend or uncertainty.  They need only raise a "plausible inference" that Defendants had this knowledge when they issued their Form 10-K.  *See, e.g.*, *In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *4 (S.D.N.Y. Oct. 30, 2017) ("Defendants argue that even if plaintiffs pleaded the existence of a trend, they failed to plead that CPI knew of the trend before the IPO, as item 303 requires.  But plaintiffs have pleaded specific facts that, at least when taken as a whole, raise a plausible inference that CPI knew of the trend before the IPO.");[3] *McKenna v. SMART Techs. Inc.*, 2012 WL 3589655, at *5 (S.D.N.Y. Aug. 21, 2012) ("the totality of the allegations indicate that there was knowledge inside SMART regarding a change in demand that impacted significant aspects of SMART's operations"); *see also Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 104 (1st Cir. 2013) (plaintiffs' allegations "allow[ed] the reasonable inference that, before the Offering," the defendant was aware of Item 303 uncertainties).

Given Defendants' dramatic reduction in HeatStick shipments in 1Q18 – by more than 50% – Plaintiffs have raised a plausible inference that Defendants were aware of the drop in demand for iQOS by February 14, 2018, when they issued their Form 10-K.  Indeed, Plaintiffs

---

[3]  In a case under Section 11 of the Securities Act of 1933, the relevant time is the date of the IPO.  Here, where Plaintiffs allege claims under the Securities Exchange Act of 1934, the relevant time is the issuance of the Form 10-K.

have raised a plausible inference of this awareness with respect to Calantzopoulos's February 8 assurance to the market that there was nothing "in the horizon" that would change the outlook for combustible and HeatStick volume in Japan. ¶283. Yet Defendants, in violation of Item 303, chose not to disclose the declining demand resulting from the near-saturation of the younger iQOS user base.[4]

Defendants' related objections to reconsideration are equally meritless. Defendants never disclosed the serious risk alleged here – of saturating the youth market in Japan with a product that was expected to drive the Company's future (¶33) – thus establishing their violation of Item 503.

Finally, Defendants do not even mention (or try to distinguish) *SMART*, 2012 WL 3589655, cited in Plaintiffs' opening brief (Pl. Mem. at 6, 7), sustaining a securities claim based on the plaintiff's allegation that SMART Technologies had violated Item 303 by failing to disclose a known decline in demand for its products, as here. *See id.* at *4.

### C.    The Court Should Reject Defendants' "Horizon" Arguments

Defendants offer a convoluted argument for why Calantzopoulos's affirmative "horizon" statement (¶283) cannot be actionable. They contend that, because Calantzopoulos was discussing the Company's "*overall* tobacco market in Japan" (Def. Mem. at 8) – that is, "combustible *plus* [] HeatStick[s]" (¶283), not just HeatSticks – Plaintiffs have taken Calantzopoulos's "nothing in the horizon" representation out of context. *See* Def. Mem. at 9 ("But when the statement is read in

---

[4]   Oddly, Defendants rely on their earlier purported expectation of a "substantial surge" in demand in 1Q18 to argue they cannot have been aware of a reduction in demand by mid-February. Def. Mem. at 7. It is undisputed, however, that Philip Morris affirmatively decided to reduce its shipments in 1Q18 – the Company reported as much (¶140) – and Defendants' earlier optimism cannot negate that fact or their awareness of their own decision. At a bare minimum, there is a question of fact, unresolvable on a motion to dismiss, about exactly when in 1Q18 Defendants became aware of that drop in demand. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 235 (2d Cir. 2014) ("defendants' arguments here involve questions of fact and should not be resolved upon a motion to dismiss").

full . . . ."). This argument defies logic.

Calantzopoulos was responding to the following question from a Goldman Sachs analyst: "So I'm just wondering what you're thinking in terms of the combustible *plus the HeatStick* volume outlook for Japan, if there is anything changing from a secular perspective that you see?" ¶283. Calantzopoulos responded: "[W]e have our own projection for total market in Japan, *including obviously HeatSticks.  And there's nothing in the horizon that would affect – that would cause any change in what happened in the previous years*. . . ." *Id.*

As Plaintiffs allege, in 1Q18, something *was* "changing" that would affect "what happened in the previous years" in Japan: demand for HeatSticks – one of the two components of the overall market about which the analyst asked (with combustibles) – was falling.  If, as Plaintiffs allege, the Company was already reducing shipments of HeatSticks to Japan by billions of units – a more than 50% reduction – *or even knew it would have to do so*, Calantzopoulos's response to the analyst's question *cannot* be true.  He cannot, on the one hand, have been aware Philip Morris was already slashing shipments to Japan by billions of units (or was about to do so), and on the other hand claim there was "nothing in the horizon that would affect" Philip Morris's overall outlook in Japan.  That Calantzopoulos was discussing combustibles "plus" HeatSticks does not make his statement any more true: a decrease of HeatStick shipments of that magnitude (and the associated decrease in demand) would *necessarily* "cause [a] change in what happened in the previous years" (¶283), and should have been disclosed.[5]

In response to these allegations, Defendants cite *In re Supercom Inc. Securities Litigation*, 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018), in which an individual defendant claimed to have

---

[5]   Thus, Defendants' contention that Mr. Calantzopoulos's statement was "true" defies belief.  *See* Def. Mem. at 10.

- 6 -

"all the information in hand" – a "present tense" representation – to support the company's projections, which were forward looking. *Id.* at *7, *21; *see also* Def. Mem. at 9. Although the court found this present-tense representation not to be actionable, it did so only because the statement did not "provide specific information about the current situation." 2018 WL 4926442, at *21. That is, it was "too vague to be actionable apart from the future projection[s]." *Id.* Here, by contrast, Calantzopoulos made a very particular present-tense representation – that he was currently unaware of any specific information that would "cause any change in what happened in the previous years . . . ." ¶283. Because he *was* aware of specific information – the saturation of the youth market requiring severe shipping cuts – his affirmative representation was actionable.[6]

Although Defendants acknowledge that the safe harbor for forward-looking statements does not apply to the present portion of so-called mixed statements – indeed, the very case law they cite holds as much[7] – they contend Plaintiffs have somehow waived that argument. *See* Def. Mem. at 9 n.4. But Plaintiffs have been completely consistent that the representation in question was present tense, not forward looking. That Plaintiffs did not address the *other*, arguably forward-looking portions of Mr. Calantzopoulos's answer, which do not bear on their claims, is irrelevant.

Finally, Defendants once again raise their fraud-by-hindsight argument. *See* Def. Mem. at 10. As discussed above, however, Plaintiffs have alleged facts creating a reasonable inference that Calantzopoulos was aware of the falsity of his misrepresentation when he made it. *See* Section II.B above (citing, *inter alia*, *CPI Card Grp.*, 2017 WL 4941597, at *4; *SMART*, 2012 WL

---

[6] In *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010), on which Defendants also rely (Def. Mem. at 9), the court found – in stark contrast with the situation here – that "plaintiffs do not actually contest the veracity of any present tense portion of defendants' statements . . . ."

[7] *See Supercom*, 2018 WL 4926442, at *21 ("'Mixed present and future statements are not entitled to the safe harbor with respect to the part of the statement that refers to the present.'") (quoting *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 59 (E.D.N.Y. 2011)).

- 7 -

3589655, at *5). At a bare minimum, there is a question of fact, unresolvable on a motion to dismiss, about when Defendants became aware that demand for iQOS had dropped. *See Carpenters Pension Tr. Fund*, 750 F.3d at 235.

### D. Defendants Provide No Justification for Deviating from the Second Circuit's Strong Preference for Leave to Amend

Plaintiffs have asked the Court to reconsider its dismissal of their claims with prejudice, save for the Four Undisclosed Studies, to avoid a manifest injustice, since the Order was the first time the Court formally addressed the adequacy of any complaint in this action. Recent Second Circuit case law reflects a strong preference allowing Plaintiffs to amend in full. *See, e.g.*, *Loreley*, 797 F.3d at 190 ("Without . . . a ruling, many a plaintiff will not . . . be in a position to weigh the practicality and possible means of curing specific deficiencies."); *Kopchik, III v. Town of E. Fishkill, N.Y.*, 759 F. App'x 31, 38 (2d Cir. 2018).[8] This preference for leave to amend is especially strong because Plaintiffs assert securities-fraud claims. *See, e.g.*, *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009).

Indeed, in the wake of *Loreley* and *Kopchik*, district courts recognize that "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Burstein, P.C. v. Long*, 2017 WL 3535004, at *10 (S.D.N.Y. Aug. 16, 2017) (quoting *Loreley*, 797 F. 3d at 190). That is true even where – *unlike* here – a plaintiff has previously amended a complaint and "offers no suggestion for how he can remedy

---

[8] Defendants unsuccessfully try to distinguish *Loreley* by arguing that the plaintiffs there never had an opportunity to amend, but that is both incorrect and irrelevant. *See* Def. Mem. at 11. The *Loreley* plaintiffs, like Plaintiffs here, decided not to further amend their complaint before the Court ruled on a motion to dismiss. *See Loreley*, 797 F.3d at 190. More importantly, *Loreley* holds that plaintiffs should have an opportunity to replead – particularly in a fraud action – to respond to deficiencies identified in the court's first formal response to a complaint. *See id.* at 191. Thus, *Loreley* supports allowing Plaintiffs to amend in full, especially where, as here, Plaintiffs have seen the Court's ruling, and believe they can address the identified deficiencies.

the defects identified in [an] Opinion." *See id.* at *9. Accordingly, Plaintiffs should be allowed to replead in full because Defendants do not contest, and thus effectively concede, that there is *no* "undue delay, bad faith or dilatory motive on the part of [Plaintiffs, nor] repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice." *See Williams v. Citigroup Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (*per curiam*).[9]

Nonetheless, Defendants oppose leave to amend because Plaintiffs: (i) only initially requested leave in a footnote in Plaintiffs' opposition to Defendants' motion to dismiss and did not submit a proposed amended complaint; (ii) do not describe how they will cure the defects in the complaint; and (iii) cannot cure those defects. Def. Mem. at 10-12. None of these purported reasons justify deviating from the Second Circuit's "strong preference" for leave to amend.[10]

*First*, the Second Circuit has held consistently that the form of a request is not a basis for denying leave to amend. *See Loreley*, 797 F.3d at 190 ("Generally, we will not deem a request for leave to amend insufficient on the basis of form alone"). Moreover, although the failure to submit a proposed amended complaint does not mandate denial of leave to amend, *see, e.g.*, *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 456 (E.D.N.Y. 2017), Plaintiffs are not, in any event, presently requesting leave to amend (despite reserving their right to do so at a later date). *See* Pl.

---

[9] Although Defendants cite examples of securities class actions where district courts denied leave to replead, those cases were, among other things, decided before *Loreley* and *Kopchik*, which underscored the Second Circuit's strong preference for leave to amend. *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006); *Singh v. Schikan*, 2015 WL 4111344, at *1 (S.D.N.Y. June 25, 2015); *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *5 (S.D.N.Y. Dec. 4, 2009); *Go v. Rockefeller Univ.*, 2008 WL 619039, at *4 (S.D.N.Y. Mar. 6, 2008); *In re Crude Oil Commodity Litig.*, 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 7, 2007).

[10] Defendants also suggest that Plaintiffs have forfeited the opportunity to replead pursuant to Rule 4.C of the Court's individual rules and practices. *See* Def. Mem. at 4. But Rule 4.C addresses only notice to the Court about whether a non-moving party will oppose a motion to dismiss or amend its claims. The Rule says nothing about waiving further amendments to a complaint.

Mem. at 12 n.5. Rather, they are simply asking for an opportunity to replead consistent with *Loreley*. Therefore, there is no need to submit a draft complaint.

*Second*, Plaintiffs have identified specific types of allegations they intend to plead in their second amended complaint. These include allegations that Defendants: misled investors as to the risks of harm presented by iQOS, despite knowing that iQOS contains numerous toxic substances; did not believe the statements the Court found to be inactionable as puffery or opinion, and failed to disclose facts that "conflict[ed] with what a reasonable investor would take from the statement[s]" themselves; and made other misleading statements concerning Philip Morris's transparency in communicating study results. *See* Pl. Mem. at 12. Since Plaintiffs "explain the basis for, and nature of, the proposed amendment," they should be granted leave to amend in full. *See, e.g.*, *Rozenzweig*, 251 F. Supp. 3d at 456.

*Finally*, Defendants conclusorily assert that "Plaintiffs cannot cure the numerous defects that render Defendants' statements inactionable." Def. Mem. at 12. In fact, however, Plaintiffs' second amended complaint will allege that Defendants' generic warnings concerning the risk that the FDA would not approve Defendants' MRTP application for iQOS were misleading because Defendants knew their data demonstrated that iQOS did *not* reduce the risk of harm or smoking-related diseases. Plaintiffs will also allege that iQOS contained extraordinarily larger amounts of, *inter alia*, propylene glycol and glycidol – well-known toxins – than conventional cigarettes. Plaintiffs will use these and similar allegations to show that Defendants' statements concerning the toxicity of iQOS, which were dismissed as opinion or puffery, are actionable.

### III.   CONCLUSION

For the reasons above and in their opening memorandum of law, Plaintiffs respectfully request that the Court grant partial reconsideration of the Order.

DATED: March 10, 2020						Respectfully submitted,

ROBBINS GELLER RUDMAN &
  DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK T. MILLKEY
ROBERT D. GERSON


					*/s/ David A. Rosenfeld*
					DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mmillkey@rgrdlaw.com
rgerson@rgrdlaw.com

POMERANTZ LLP
JEREMY A. LIEBERMAN
EMMA GILMORE
VILLI A. SHTEYN (admitted *pro hac vice*)
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
Ten South LaSalle Street, Suite 3505
Chicago, Illinois  60603
Telephone:  312/377-1181
312/377-1184 (fax)
pdahlstrom@pomlaw.com

POMERANTZ LLP
JENNIFER PAFITI
1100 Glendon Avenue, 15th Floor
Los Angeles, CA  90024
Telephone:  310/405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on March 10, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN &
   DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
drosenfeld@rgrdlaw.com